POOL & WINTERMEIER, Appellees, v. A. E. DENNIS, Appellant.

BILLS AND NOTES: Fraud—Evidence. Evidence reviewed, and held
  quite insufficient to establish either failure of consideration or fraud
  in the inception of a note.

*Appeal from Jasper District Court.*—H. F. WAGNER, Judge.

MARCH 11, 1924.

REHEARING DENIED JUNE 28, 1924.

ACTION on an $800 note given by defendant Dennis to his codefendant, McCarty, and by McCarty transferred to plaintiffs. Judgment by default entered against McCarty. Defendant, Dennis, alleged fraud in the inception of the note. At the close of defendant's testimony, on motion of plaintiffs, the court directed verdict in favor of plaintiffs for the amount due on the note, and judgment was entered on the verdict. Defendant appeals.—*Affirmed.*

*Campbell & Campbell,* for appellant.

*Ross R. Mowry,* for appellees.

ARTHUR, C. J.—I. The petition is the ordinary one in an action on a promissory note. In his answer defendant, Dennis, admitted execution and delivery of the note. The answer alleged that plaintiffs were not holders in due course for value, and without notice of infirmities; that the note was without consideration; that the note was given to McCarty under a contract by which McCarty agreed to deliver to Dennis a quantity of stock remedy known as "Santo," and to assist Dennis in selling the same; that, although often requested to do so, McCarty failed and refused to assist Dennis in selling said stock food; that McCarty falsely and fraudulently represented to Dennis that he was the owner of the stock remedy; that, in truth and

fact, McCarty was not the owner of said remedy, and never had been; that Dennis relied upon said agreements and representations made by McCarty, in executing the note in suit; that, at and prior to the execution of the note, McCarty represented to him that there were 10,000 pounds of said stock remedy, that the same was in good condition, stored in a certain warehouse, that he owned an interest in the same, and that he would sell same for Dennis for from 15 to 18 cents per pound, if defendant would purchase the same and execute said note, and if Dennis would furnish and drive an automobile for McCarty while he was making said sale; that said statements were false, and known by McCarty to be false at the time he made them, and that said statements were made for the purpose of defrauding him and inducing him to execute said note; that McCarty did not intend to perform said promises at the time he made them; that he made them for the purpose of inducing defendant to execute said note; that defendant believed said statements, and relied upon them, and was induced thereby to execute said note; that defendant never received said stock remedies or any part thereof, nor has McCarty ever sold any part of the same for defendant, and that defendant has never received anything whatsoever for said note; that said stock remedies have been disposed of, and are not in the possession or under the control of McCarty nor one Earl Cooper, to whom it belonged; that the note is nonnegotiable, and that plaintiffs are not the holders thereof in due course for a valuable consideration without notice; that another note for $300 given by McCarty at the same time as the $800 note, and for the same purpose, was by McCarty delivered to Cooper, who afterwards surrendered the same to defendant.

In an amendment to his answer, defendant, Dennis, alleged that, at and prior to the time the note in suit was signed and delivered, McCarty agreed with defendant that, if he would execute the note in suit and the $300 note given at the same time, he, McCarty, and Cooper would not negotiate, transfer, or dispose of said notes until after said stock remedies had been sold and disposed of by assistance of McCarty, as alleged in the original answer; that defendant believed said promises and relied upon same, and was thereby induced to execute said notes; that

said promises and agreements were false, and known by McCarty to be untrue at the time he made them; that defendant relied upon said promises and agreements, and was induced thereby to execute the said notes; that the note in suit was transferred by McCarty to plaintiffs in breach of said agreement and in fraud of defendant's rights in the premises.

In reply, plaintiffs aver that they acquired the note for value, before maturity, and in due course; deny that they had any notice or knowledge of any infirmities at the time they purchased same from McCarty; deny that they had any notice or knowledge of any fraud in the procurement of said note; deny that said note was without consideration, or that the considera- tion therefor had failed.

Plaintiffs further averred that, if there was any fraud in the inception of said note, or if the note was without considera- tion, or that consideration had failed, the defendant, Dennis, had waived said defenses to said note by turning back to Cooper the stock remedy and receiving from Cooper the $300 note which he had given Cooper at the time of the execution of the $800 note in suit, and is estopped from availing himself of the alleged defense of fraud.

II.   J. A. Pool, witness for plaintiffs, testified that he was a member of the plaintiff firm of Pool & Wintermeier; that he saw R. A. McCarty sign the indorsement on the back of the note in suit, which reads:

"Pay to Pool & Wintermeier. If this note is not paid when due, the payee (endorser) is to have eight months thereafter to collect same before suit is brought thereon. R. A. McCarty."

He further testified that his present business is selling tomb- stones; that his firm was the owner of the note in suit; that his firm purchased the note from R. A. McCarty in June or July, 1920. The note was introduced in evidence, and plaintiffs rested.

In his own behalf, defendant, Dennis, testified, in substance, that he first met McCarty about a month before the note in suit was executed; that McCarty was in the stock remedy business; that he and McCarty first engaged in conversation in the lobby of a hotel in Newton, Iowa, about stock remedies; that McCarty

said to him that he knew where they could make some money, if he wanted to take hold of it; that McCarty said that Earl Cooper had some stock remedy, and that, if defendant would buy it, he (McCarty) would go out and help him sell it; that, if defendant would furnish the car, he would help him sell the stock remedy, and they would divide the profits; that in a day or two they talked the matter over again; that McCarty then told him that Earl Cooper had 10,000 pounds of ''Santo'' stock remedy, and that he (Dennis) could buy it for 11 cents a pound; that he told McCarty that he would take it, and they went to Cooper's office and made out a note for $1,100 to Cooper, and consummated the deal; that McCarty said that the stock remedy was in Cooper's warehouse, and that it was in good condition; that McCarty said that ''he and I would go out in a car, that I would drive the car, and that he would do the selling,'' and that they would split the profits; that sale would be made at 18 cents per pound in small lots and 15 cents in large quantities; that he did not see the stock remedy at the time he gave the note for $1,100; that, a few days after he executed the $1,100 note, he met McCarty, and McCarty told him that he had purchased a part of this stock remedy from Cooper ''and wanted to know if I cared to make out new notes. I said that it did not make any difference to me; so we went down to Cooper's office again. He said that the deal will stand just the same as it did before. He was to help me sell it. We went to Earl Cooper's office together. We made out the $800 note to R. A. McCarty and the $300 note to Earl Cooper, and Cooper gave me the old note (the $1,100 note), and I destroyed it.'' Defendant further testified that, at the time he executed the $800 note, the note in suit, he believed the statements of McCarty that he owned an interest in the stock remedy, and that there were 10,000 pounds of Santo in the warehouse in good condition, and that McCarty would help him sell the remedy; that he believed said statements were true, and relied upon them when he executed the note in suit; that he did not know that said statements were false and untrue at the time he signed the note; that he did not know that McCarty did not intend to perform his promises; that said statements were false; that he would not have signed the note if he had known that

said statements were false and that McCarty did not intend to perform his promises; that, after he delivered the note, he requested McCarty at different times to help him sell the stock remedy, and that McCarty always made some excuse that he had other work to do, and did not go with him; that McCarty never sold any of the stock remedy for him; that he never received any of the stock remedy; that, two or three months after he signed the note, he saw the stock remedy at the warehouse for the first time; that some of it was caked, and the rats had worked in some of it; that he did not know whether it was caked or not, or whether there had been rats in it or not, at the time he gave the note; that Cooper returned to him the $300 note which he had given Cooper.

Earl Cooper, called by defendant, testified that he was in the coal business; that he remembered the stock remedy transaction between McCarty and Dennis that took place about March 6, 1920; that he had some stock remedies at the time; that McCarty did not have any ownership in the stock remedies; that, in the sale to Dennis, McCarty acted for him; that McCarty told him that he was going to help Dennis sell the stock food; that, after the sale to Dennis, the stock food was kept in his warehouse; that he had disposed of the stock food; that he told Dennis that he would give him back his $300 note for the 10,000 pounds of stock food, and Dennis agreed to it, and he returned the note to Dennis and kept the stock food; that he had no interest in the $800 note; that there was nothing said about the $800 note; that McCarty held the $800 note at the time; that, at the time Dennis executed the original $1,100 note, there were 10,000 pounds of stock food in the warehouse; that Dennis was to get the stock food at any time he wanted it; that Dennis never called for any of the stock food; that the $800 note was made direct to McCarty for selling the stock food; that the $300 note represented what he got for the stock food; that McCarty got the $800 note for acting as his agent in selling the stock food to Dennis; that he was to keep the stock food in his warehouse until Dennis sold it or called for it; that Dennis never called for it; that there was nothing said in his presence that he could remember, to the

effect that McCarty was to hold the $800 note until the stock food was sold.

Plaintiffs offered no evidence in rebuttal.

III. The motion for directed verdict stated that the undisputed evidence showed that there was a legal consideration for the note; that the consideration for said note had not failed; that said note was not procured by fraudulent representations; that there was no fraud in the inception of said note; that the undisputed evidence showed that, subsequent to the execution of the note, Dennis and Cooper made an arrangement by which the stock food for which the note in suit was given was turned back to Cooper for the $300 note which had been given to Cooper by Dennis; that, said stock food having been transferred from the possession and ownership of Dennis, it would have been impossible for McCarty to have helped Dennis sell said stock food, and, by making said arrangement, Dennis waived his right to require McCarty to assist him in selling said stock food, and is estopped from urging same as a defense; that, under all the evidence, Dennis had not established a legal defense; that defendant was guilty of negligence in not making examination of the stock food at the time he executed the original $1,100 note, or the $800 and $300 notes thereafter given; that Dennis had an opportunity to examine the stock food at the time he purchased it, and to ascertain the condition of same, and, having failed to do so, was guilty of negligence, and was estopped from claiming that the stock food was not in good condition at the time he purchased same.

Said motion for a directed verdict was sustained.

IV. The error assigned is that the court was wrong in sustaining plaintiffs' motion to direct a verdict. The question presented is whether the evidence introduced by defendant was sufficient to entitle him to have the case submitted to the jury. Giving to the evidence the force and effect which must be accorded on a motion to direct verdict, we think defendant did not make out a case entitling him to go to the jury, and that it was not error to direct a verdict in favor of plaintiffs. The testimony shows that the stock remedy purchased by Dennis was delivered to him in the warehouse where it was stored. The testimony of

his own witness, Cooper, shows that the remedy was kept in the warehouse for Dennis. That there were 10,000 pounds of the remedy, and that it was in good condition at the time of the purchase and delivery, is not questioned. True, Dennis testified that, some months after the purchase, he for the first time examined it, and found some slight damage by rats working in it, and some of it caked; but this condition does not relate to the time of the purchase. The value of the remedy is not questioned. The evidence does not show failure of consideration for the note.

If there was any fraud practiced, inducing the execution of the note, it must be found in the promise of McCarty to go out with Dennis in an automobile over the country,—Dennis to furnish and drive the automobile and help retail the remedy,—and the failure of McCarty to carry out such promise, and the promise of McCarty to hold the note until the remedy was sold, and the breach of said promise. There was no specific time when or within which McCarty was to assist Dennis in the sale of the remedy. Dennis says that he requested McCarty several times to go with him to sell the remedy, and that McCarty always made excuse that he had some pressing work on hand, and could not go; and that he never did go with him to assist in selling the remedy. About four months after the purchase of the remedy, Dennis resold it in bulk to Cooper, and thus made it unnecessary and impossible for McCarty to assist him in retailing the remedy.

It also appears from the evidence that McCarty did not negotiate the note in suit until after Dennis had turned the stock remedy back to Cooper for the $300 note which he had given to Cooper, and thus had held the note until the stock remedy was disposed of by Dennis himself.

Dennis never rescinded or offered to make any rescission; he never tendered back the stock remedy and demanded the notes given therefor. If it may be said that the evidence disclosed fraud in the inception of the note sufficient to take the case to the jury upon that issue, we think that Dennis, by his acts in disposing of the stock remedy himself, released McCarty from any obligation to assist him in disposing of the stock

remedy, and also released him from promise to hold the note until after the remedy had been disposed of. Under this situation of the record, we think that no burden rested upon the plaintiffs to show purchase of the note in suit in due course, without knowledge of infirmities. We think the court did not err in directing a verdict for plaintiffs.

Results in affirmance of the case.—*Affirmed.*

EVANS, PRESTON, and FAVILLE, JJ., concur.